IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| VICTOR ADRIAN AGUIRRE | § | |
| v. | § | CIVIL ACTION NO. 6:08cv306 |
| MAJOR MICHAEL OWENS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Victor Aguirre, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining that his constitutional rights were violated during his confinement in the jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Aguirre named Major Michael Owens and Captain Joe Carmichael, who were members of the Unit Classification Committee at the Beto Unit, and Sgt. Prentice McBride, a correctional officer at the Beto Unit. Sgt. McBride has since been dismissed from the case.

At an evidentiary hearing and in his complaint, Aguirre said that beginning in 2004, a series of riots began between inmates from El Paso, Texas, and inmates from Mexico. In January of 2004, Aguirre said that he was placed in administrative segregation. In March of 2007, he was recommended for release from segregation to the general population by the State Classification Committee. The unit classification committee at the Beto Unit then had a hearing, but Aguirre contended that he was not allowed to attend this hearing or to explain the problem of the rival factions, so he was released to general population.

Upon his release from segregation on March 19, 2007, Aguirre said, he was taken to Cell T-120. The inmate in that cell asked where Aguirre was from, and Aguirre replied that he was from El Paso. The inmate in the cell said that "no one from El Paso can live here." Officer Thompson,

1

the escorting officer, called Sgt. McBride, who told Aguirre to collect his property and wait in the dayroom. McBride placed Aguirre in Cell T-106, a different cell, but on the same cellblock.

The next day, Aguirre says, he was assaulted in the dining hall by several inmates, one of whom used a water pitcher. He said that this assault resulted in a fight which officers had to use pepper spray to stop.

Aguirre explained that the troubles between the inmate factions was actually a war between two prison gangs, the Barrio Azteca and the PRM (Partido Revolucionario Mexicano, or Revolutionary Party of Mexico). He said that the State Classification Committee told him to address his concerns regarding his safety to the unit committee, but that he never got the chance; Aguirre stated that he was supposed to be allowed to attend a hearing prior to his release from segregation, but he never did.

After dismissing Sgt. McBride, the Court ordered Owens and Carmichael to answer the lawsuit. After doing so, these Defendants filed a motion for summary judgment on December 7, 2009. Aguirre sought a Rule 56 continuance, saying that he was not getting all of the disclosure which he needed to respond to the motion for summary judgment. The Court set the matter for a hearing, which was conducted on January 13, 2010. At this hearing, Aguirre stated that he wanted documents concerning a riot which had occurred in July of 2004, saying that this was relevant because the riot was between rival gangs, one from Mexico and one from El Paso, and he was from El Paso; thus, he reasoned, prison officials should have been on notice that he would be in danger if placed in the general population. Counsel for the Defendants explained that Aguirre had received disclosure concerning his placement in administrative segregation, which had happened in January of 2004, but not about the riot itself because Aguirre had not been involved in it. Counsel acknowledged that there had been long-standing problems between the inmates from Mexico and those from El Paso. Following the hearing, the Court denied Aguirre's motions for a continuance and for appointment of counsel, and set a deadline of February 2, 2010, for Aguirre to respond to the motion for summary judgment. Aguirre filed his response in a timely manner.

In their motion for summary judgment, the Defendants argue that they are entitled to Eleventh Amendment immunity, they were not deliberately indifferent to Aguirre's safety, and Aguirre failed to exhaust his administrative remedies. In response, Aguirre points to the statement by counsel at the hearing, saying that this amounted to an admission that the Defendants were aware of the unsafe conditions. He also says that the Defendants are not entitled to Eleventh Amendment immunity because he is suing them in their personal capacities, that he did not file a grievance prior to the assault because he had been told that the unit classification committee was the proper forum in which to raise his complaint, and that he acquired a weapon in order to protect himself.

## Legal Standards and Analysis

### General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Furthermore, it should be noted that the Fifth Circuit has stated that conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat a properly supported motion for summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994); *see also* Michaels v. Avitech, Inc., 202 F.3d 746, 755 (5th Cir. 2000) (noting that if a "mere scintilla" of evidence is presented in support of a position, which would not be sufficient to allow a reasonable juror to conclude that the position more likely than not is true, then the trial court remains free to

grant summary judgment). With the appropriate standards in mind, the Court will address Aguirre's specific assertions.

### I. Deliberate Indifference

Aguirre contends that the Defendants were deliberately indifferent to his safety, resulting in his being assaulted and injured. The Fifth Circuit has stated that prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this regard, the Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

There is no concise definition of what types of prison conditions pose a "substantial risk of serious harm" under the Eighth Amendment. Instead, the Fifth Circuit said, this component of the test must be examined conceptually, making sure to be responsive to "contemporary standards of decency." The Court must consider "whether society considers the risk...to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Horton, 70 F.3d at 401, *citing* Helling v. McKinney, 113 S.Ct. 2475 (1993). Prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm "in the next week or month or year." Horton, 70 F.3d at 401.

In Horton, the plaintiff arrived at the Clements Unit and was immediately approached by an inmate named Jackson, who threatened to assault him unless he paid extortion money. Horton reported the threat the next morning to a desk officer, who said that he could not do anything and referred Horton to his correctional counselor. Later that same day, Jackson approached Horton and made threatening gestures; Horton, believing that he had no choice, punched Jackson in self-defense. Both Horton and Jackson were placed in pre-hearing detention.

Horton filed a grievance the next day stating that Jackson was assaultive and had tried to extort money from him. The warden refused Horton any relief and referred him to his correctional

6

counselor. Horton appealed, saying that he had already talked to his counselor, but the appeal was denied.

Horton and Jackson were sent to the same section of the prison when they were released from detention. Horton continued to file grievances concerning Jackson's violent tendencies. Several days later, Jackson approached Horton and punched him in the eye. Horton and Jackson were again charged with fighting, and the disciplinary committee would not consider Horton's plea of self-defense.

The Fifth Circuit determined that based upon these facts, Horton had stated an arguably valid claim of failure to protect, because he had alleged both a sufficiently imminent danger and a substantial risk of serious harm.

In the present case, counsel for the Defendants stated that there had been long-standing tensions between inmates from Mexico and inmates from El Paso, and that this fact was undisputed. This arguably is enough to show that the Defendants *should have* perceived a risk to Aguirre; however, such a showing is not sufficient to rise to the level of deliberate indifference. As noted above, the Supreme Court drew a distinction between the failure to alleviate a significant risk which the officer should have perceived but did not, and a situation in which the officer has actual knowledge of facts from which the inference can be drawn that a significant risk exists, and does draw that inference. Farmer, 511 U.S. at 838.

Aguirre testified that in March of 2007, he was recommended for release from administrative segregation by the State Classification Committee, and the unit classification committee held a hearing which he was not allowed to attend.[1] Following this hearing, Aguirre was released from administrative segregation and taken to Cell T-120, but the inmate in there said that "no one from El Paso can live here." Aguirre was then moved to Cell T-106, and was assaulted the next day in the dining hall.

---

[1] The Defendants state that Aguirre did attend this hearing. For summary judgment purposes, the Court will assume that Aguirre's version of events is correct.

Aguirre has failed to show that the Defendants had actual knowledge of facts from which an inference could be drawn that he faced a significant risk of harm, and that they drew this inference. The fact that tensions existed between inmates from Mexico and inmates from El Paso does not itself show that the Defendants knew that Aguirre was in danger as soon as he left segregation. He says that Major Owens and Captain Carmichael were members of the unit classification committee and that he was not allowed to attend the hearing, but fails to show that his release from segregation as a result of this hearing was deliberate indifference rather than mere negligence or lack of due care. As the Defendants point out, Aguirre filed no grievances or requests prior to March 20, 2007, in which he said that he was in danger or identifying potential threats. He never complained that as an inmate from El Paso, he faced danger from the inmates from Mexico or from members of the PRM gang. The fact that the members of the Unit Classification Committee were or should have been aware of the general tensions between the El Paso inmates and those from Mexico does not mean that they had a specific knowledge of a threat to Aguirre, nor that they were deliberately indifferent to such a threat. His claim of deliberate indifference is without merit.

In his response to the motion for summary judgment, Aguirre again points to the Defendants' acknowledgment that the 2004 riot between the Barrio Azteca and the PRM had taken place. He says that he did not file a grievance because the State Classification Committee had told him to address his concerns to the unit classification committee, but offers no reason why he did not file grievances or requests prior to his seeing the State Classification Committee. These assertions fail to show that the Defendants were deliberately indifferent to his safety in March of 2007.

Aguirre also says that the Defendants "falsified classification records" to show that he was present at the hearing when he was not, which shows that they were deliberately indifferent to his safety. However, the issue with regard to a claim of deliberate indifference to safety is whether the Defendants knew that Aguirre faced a substantial risk of harm and disregarded this risk. Aguirre's claim that the alleged falsification of the records proves deliberate indifference presupposed that the Defendants knew not only that he faced a risk upon release from segregation and thus did not want

him to appear at the hearing, but also that they knew that litigation would ensue and thus wanted to cover their tracks. The fact that an apparent discrepancy exists between records showing that Aguirre was present at the hearing, and an activity log showing that he was not taken out of his cell for a hearing, is not proof of deliberate indifference; even if the Defendants in fact deliberately wrote that he was at the hearing when he was not, this does not necessarily show that they were indifferent to his safety, rather than merely hiding a violation of TDCJ rules requiring that the he be called out for the hearing.

Similarly, Aguirre has not shown that the fact that he was not called out of his cell to attend the UCC hearing amounted to deliberate indifference to his safety. The committee members had no reason to be aware of a specific threat to Aguirre's safety; less than two weeks earlier, the State Classification Committee had recommended Aguirre's removal from administrative segregation and placement in the general population. During the investigation into the assault, Aguirre told the investigating officer that he did not know why he had been assaulted. While both of his assailants were members of the PRM gang, Aguirre denied membership in the BA, saying only that he "hung around" with members of that gang. Aguirre points to no known facts from which the Defendants should have drawn the inference that he faced a significant risk of danger, other than the general fact that the tensions between El Paso inmates and those from Mexico were known by prison officials.

The general knowledge of violence between inmates from El Paso and inmates from Mexico, particularly given the fact that the gang fight to which Aguirre alludes had taken place three years earlier, is not sufficient to satisfy the constitutional standard of deliberate indifference. As noted above, Aguirre never advised prison officials prior to the assault that he faced any particular danger. *Compare* Tarrant v. Velasquez, 281 F.3d 1280, 2001 WL 1692508 (5th Cir., November 30, 2001) (inmate alleged, prior to assault, that he had suffered "continual problems" with a prison gang, that he had received a specific threat of harm from an unidentified member of that gang, and that he wrote "a succession of letters" regarding the threat; the Fifth Circuit held that these facts were sufficient to show that his deliberate indifference claim was not frivolous).

9

In Perez v. Anderson, 350 Fed.Appx. 959, 2009 WL 3461292 (5th Cir., October 28, 2009), the plaintiff Perez, a pretrial detainee in Tarrant County, testified in a murder trial against a member of the Aryan Brotherhood of Texas (ABT). Perez was subsequently placed in general population and was attacked by a member of the gang. The Fifth Circuit held that Perez failed to show that the officials knew of an excessive risk to his safety, in that he did not show that the officials knew that he had testified against an ABT member, nor that any ABT members in the jail had committed violent crimes so as to put the jail officials on notice that these individual members posed a substantial risk to all other inmates.

Aguirre argues in his response to the motion for summary judgment that because counsel for the defendants stated that unsafe conditions existed, "plaintiff need not prove this element of his claim." He goes on to say that "since the defendants were disputing the fact that these conditions existed, the claims they make in their motion for summary judgment regarding this issue (actual knowledge) have already been established by their acceptance that they did in fact have actual knowledge of the unsafe conditions plaintiff complains of."

Counsel did not acknowledge that the named defendants in this case had actual knowledge that Aguirre personally was in danger. Rather, as made clear in the Court's order dated January 13, 2010, counsel acknowledged that there had been long-standing tensions between the El Paso inmates and those from Mexico. The Court noted that this allowed Aguirre to "set forth the argument that the Defendants had or should have had notice that he would be in danger if he were placed back into general population," without need for specific discovery of information concerning a riot which Aguirre said had taken place in 2004.

The issue in the case is whether the named defendants, Major Owens and Captain Carmichael, were deliberately indifferent to Aguirre's safety. As set out above, such a showing would require that the defendants had actual knowledge of, and disregarded, a threat to Aguirre's safety. The mere fact that Aguirre was from El Paso is not sufficient to show that by this reason alone, he necessarily faced an imminent risk of harm upon being released. This is particularly true

given the fact that Aguirre denied being a member of the Barrio Azteca gang, which was the group actually involved in the conflict.

Furthermore, as the Defendants note in their motion for summary judgment, Aguirre filed no grievances prior to March 20, 2007, referring to gang activity, violence, or possibly being a target of assault by members of PRM. Instead, Aguirre argues only that the defendants "should have known" that he faced a risk, as evidenced by the fact that he is from El Paso. This is not sufficient to show that the Defendants were deliberately indifferent to Aguirre's safety. Farmer v. Brennan, 511 U.S. at 838 (noting that the failure to alleviate a significant risk which a prison official should have perceived but did not cannot be considered as the infliction of punishment). Aguirre has offered nothing to show that the Defendants had actual knowledge of and disregarded a threat to his safety. Even if the failure to call him out of his cell for the hearing was negligent, this would not set out a constitutional claim. Davidson v. Cannon, 474 U.S. 344, 347-48. His claim on this point is without merit.

## II. Due Process

Aguirre also appears to contend that he was denied due process through the failure to allow him to attend the hearing. This issue presents the question of what process is constitutionally required for a hearing, the purpose of which is to consider releasing an inmate from administrative segregation.

In Hewitt v. Helms, 459 U.S. 460 (1983), the Supreme Court stated that when an inmate is being moved *into* a more restrictive confinement status, such as administrative segregation, the prison officials are obligated to engage only in an informal, non-adversarial review of the information supporting the confinement, including any statement which the prisoner may wish to submit, within a reasonable time after the confinement in segregation status.

However, the reasoning of Hewitt has been disapproved by the Supreme Court in Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). In Hewitt, the Court stated that "we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive

predicates demands a conclusion that the State has created a protected liberty interest." Hewitt, 459 U.S. at 472. In Sandin, the Court observed that the methodology used in Hewitt and later cases "impermissibly shifted the focus of the liberty interest inquiry from one based on the nature of the deprivation to one based on language of a particular regulation."

In other words, the Supreme Court said that in Hewitt, the focus was on the language of the regulations, as shown by that decision's emphasis on the "repeated use of explicitly mandatory language" as giving rise to a constitutionally protected liberty interest. The proper focus, as set out in Sandin, is on the nature of the deprivation, specifically on whether the deprivation which is the focus of the hearing infringes upon a constitutionally protected liberty interest. *See also* Williams v. Castillo, 68 F.3d 466, 1995 WL 581509 (5th Cir., August 23, 1995) (drawing a distinction between Hewitt's focus on the language of the regulations and the proper focus, under Sandin, of the nature of the deprivation).

In the present case, the hearing at issue concerned whether or not Aguirre would be released from administrative segregation, and so the "deprivation" at issue concerned his classification status. The Fifth Circuit has held that placement in administrative segregation, even erroneously, is not a deprivation of a constitutionally cognizable liberty interest. Hernandez v. Velasquez, 522 F.3d 556, 562 and n.9 (5th Cir. 2008); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995). Aguirre lacks a protected liberty interest in whether he was released from administrative segregation or retained in that status, which was the "deprivation" at issue in the hearing which he says that he was not allowed to attend. Because Aguirre lacked a constitutionally protected liberty interest in his classification status, he cannot complain of the constitutionality of the procedural devices attendant to that decision. *See* Orellana v. Kyle, 65 F.3d 29, 32 (5th Cir. 1995).

This is true even though testimony at the evidentiary hearing showed that under TDCJ regulations, Aguirre should have been permitted to attend the hearing. The Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158

(5th Cir. 1986). Under Sandin, the language of the prison rules could not create a liberty interest, and Aguirre had no liberty interest in his classification status, and so the fact that he was not allowed to attend this hearing did not violate his right to the process which was due under the Constitution or laws of the United States. His claim on this point is without merit.

## Qualified Immunity

The Defendants also assert that they are entitled to qualified immunity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of federal law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). The prongs of this test are not sequential, but may be reviewed in either order. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009).

In this case, Aguirre has failed to discharge his burden of overcoming the Defendants' entitlement to qualified immunity, because he has not shown that any of the Defendants acted unreasonably in light of clearly established federal law. The Fifth Circuit has stated that the Plaintiff's burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 005). Aguirre says that the "falsification of records" shows that the Defendants are not entitled to qualified immunity,

13

but even if true, this does not show that the Defendants violated clearly established federal law, whether or not they may have violated TDCJ regulations. Aguirre's allegations do not overcome the Defendants' entitlement to qualified immunity, and so the Defendants' motion for summary judgment should be granted on this basis as well.

## Conclusion

The Court has carefully reviewed the pleadings and testimony in this cause, as well as the competent summary judgment evidence submitted by the parties. Upon such review, the Court has concluded that there is no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law. The Court has also concluded that the Defendants are entitled to the defense of qualified immunity from suit. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 44) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **16** day of **August, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE